JODY EL IDRISSI *v.* RACHID EL IDRISSI

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued May 3—decision released July 26, 1977

*Robert E. Kusch,* with whom was *Edward D. Cosden, Jr.,* for the appellant (defendant).

*David Goldstein,* with whom was *Michael A. Meyers,* for the appellee (plaintiff).

LONGO, J. This is an appeal from a judgment of a state trial referee, who, acting as the court, granted a dissolution of marriage. The referee found, pursuant to a complaint filed by the plaintiff, Jody El Idrissi, that the defendant, Rachid El Idrissi, had been intolerably cruel to the plaintiff and that their marriage had broken down irretrievably, and, accordingly, dissolved the marriage on November 29, 1974. The court concluded that the best interests of the minor son required custody in the plaintiff, denied the defendant all rights of visitation, and ordered the defendant to pay one dollar per year for support of the child. The court further ordered the defendant to pay the plaintiff within three months $25,000 as lump sum alimony in addition to monthly alimony of $500; to deliver to the plaintiff all bonds in the name of the minor child; to assign to the plaintiff a 1972 Buick automobile; to convey to the plaintiff his one-half interest in their jointly owned house subject to a first mortgage and a bank loan; to endorse and deliver to the plaintiff $750 in checks for rental income held in escrow by his counsel; to pay $6600 due on pendente lite orders for alimony, support and counsel fees; and to pay the plaintiff $6000 as counsel fees within thirty days. The court further ordered the defendant to pay the plaintiff $3500 as counsel fees to defend this appeal. The defendant has appealed from the court's judgment, claiming that the court erred in awarding alimony; in refusing to permit inquiry by the defendant as to the plain-

tiff's fault; in denying the defendant any right of visitation with his minor son; in awarding counsel fees to the plaintiff to defend this appeal; and in refusing to allow his counsel to withdraw during the trial. The defendant also makes numerous attacks on the court's finding of facts.[1]

The defendant in his first assignment of error claims that the court abused its discretion by ordering the defendant to pay substantial lump sum and periodic alimony and to transfer other property to the plaintiff. The court made numerous findings as to the defendant's financial circumstances and lifestyle. The defendant challenges five of them as having been found without evidence or in language of doubtful meaning. Findings claimed to have been found without evidence are to be tested against the evidence printed in the appendix to the appellee's brief. *Stoner* v. *Stoner,* 163 Conn. 345, 348, 307 A.2d 146. Each of the assailed findings is supported by testimony or by other, unchallenged findings. The defendant also alleges as error the refusal of the court to include in its finding thirteen paragraphs of the defendant's draft findings, which would tend to show that the defendant's income and lifestyle were more modest than found by the court. Only admitted or undisputed facts may be added to the finding. Practice Book § 628 (a). By this standard all of the defendant's draft findings were properly rejected by the court. Two are redundant since the court's finding need not be in language identical with the draft finding. *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 55–56, 221 A.2d 589.

---

[1] The defendant has not pursued in his brief two assignments of error. We, therefore, consider those assignments to be abandoned. *Stoner* v. *Stoner,* 163 Conn. 345, 348, 307 A.2d 146.

Four are contradicted by the plaintiff's testimony or by other, unchallenged findings. Seven of the defendant's draft findings are based on testimony of the defendant and his witnesses, whose credibility was for the court to determine. *Simons* v. *Simons,* 172 Conn. 341, 343, 374 A.2d 1040.

The court's finding, therefore, needs no correction and reveals the following facts: The plaintiff and the defendant were married on August 11, 1969, in New York City. Immediately following the marriage they lived in Puerto Rico where the defendant owned and operated two discotheques. The plaintiff's parents gave the parties a $5000 wedding gift and the plaintiff's father made loans to the defendant totaling $10,000. The defendant's net income from his two discotheques was $300 per week. During this period deposits from unexplained sources totaling $26,393.52 were made in the parties' bank account. The parties' expenses while in Puerto Rico included $15,000 in gambling losses; horses costing between $6800 and $8000; rent for a condominium at $350 per month; several vacations in Morocco; extensive entertaining; clothing expenditures of $500 per month by the plaintiff; and purchases by the defendant of suits costing $300 to $400 each.

In April, 1971, the parties moved from Puerto Rico to Bethany, Connecticut, where they purchased a home. A son was born to the parties on January 4, 1972. The defendant sold one of his discotheques for a net sales price of approximately $48,000 and sold the other discotheque for a gross sales price of $30,000. He earned $1200 in the employ of the plaintiff's father and for a short time ran an unsuccessful leather goods business in New Haven. The

defendant then took employment as president of Rachid's Oakdale Jockey Club, where he received a starting salary of $600 per week which was later reduced to $500 per week. The defendant was able to pay the mortgage of $839 per month on the parties' home in Bethany, buy clothing for the plaintiff, pay for expenses resulting from the birth of the minor child in addition to other medical and dental expenses, and pay the plaintiff's hairstyling and hair coloring bill of approximately $100 per month. During this period the defendant made bank deposits from unexplained sources totaling approximately $12,300. After his discharge from Rachid's Oakdale Jockey Club in August or September of 1973, the defendant wholly owned and operated a restaurant and discotheque in Hadley, Massachusetts. The business was capitalized at approximately $100,000, of which $47,000 was a loan.

In a domestic relations case, where all the surrounding circumstances and the appearance and attitude of the parties are so significant, a trial court has a distinct advantage over an appellate court. *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627. The trial court, therefore, has broad discretion in determining the type, duration, and amount of alimony which is proper in each case under the provisions of General Statutes § 46-52. *Aguire* v. *Aguire,* 171 Conn. 312, 314, 370 A.2d 948. In determining whether there has been an abuse of discretion, our review is limited to whether the court could reasonably have concluded as it did. *deCossy* v. *deCossy,* 172 Conn. 202, 205, 374 A.2d 182. On these facts we cannot say that the court abused its discretion in disbelieving much of the defendant's testimony and in making its award of alimony to the plaintiff.

The defendant next claims that the court erroneously limited his inquiry upon cross-examination into the plaintiff's activities during the marriage. Even assuming, arguendo, that the colloquy between the court and counsel which the defendant assigns as error amounted to an evidentiary ruling, we cannot review the ruling since the defendant failed to take an exception pursuant to § 226 of the Practice Book. We have repeatedly expressed our disfavor with the practice of failing to except properly, whether because of a mistake of law, inattention, or design, and thereafter assigning such errors as grounds of appeal should the outcome of the trial prove unsatisfactory. *State* v. *Ferraro,* 164 Conn. 103, 106, 318 A.2d 80; *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249. Moreover, the defendant later introduced evidence concerning the plaintiff's conduct for the purpose of showing the causes of the dissolution of the marriage.

The defendant next claims that the court abused its discretion in concluding that the best interests of the minor child required that the plaintiff have custody and that the defendant be denied all rights of visitation. "A parent's privilege of visitation of children whose custody has been awarded to the other parent in a divorce action, however, is not an absolute right but one which is dependent on what is for the best interests of the children even though such visitation rights may be restricted or effectively terminated." *Raymond* v. *Raymond,* 165 Conn. 735, 741, 345 A.2d 48. In reaching a decision as to what is in the best interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some

legal principle or right has been violated or that the discretion has been abused. *Palmieri* v. *Palmieri,* 171 Conn. 289, 290, 370 A.2d 926.

The court had the opportunity to hear the testimony of the parties and witnesses on the issue of visitation and it made the following findings: The defendant made threats that he would harm the child, and also that he would kidnap the child and take him to his native country of Morocco; when the child was accidentally burned on his legs by boiling water, the defendant refused to let the plaintiff have the keys to the car to take the child to the doctor; the defendant used vile and profane language in public and private; the defendant had left the household and had not seen the child since he was less than two years of age; the defendant was in arrears in support payments; the defendant showed affection for his son, but was at times abrupt with him; the defendant paid little attention to the minor child when he was living at home; and on several occasions the defendant stated that he did not want the child. On the basis of those facts, we cannot conclude as a matter of law that the court abused its discretion in denying visitation rights to the defendant.

The defendant next claims that the court erred in granting the plaintiff's motion, after trial, for counsel fees of $3500 to defend this appeal. We note at the outset that the defendant failed to comply with § 639 of the Practice Book, which requires the filing of a notice of appeal from a ruling subsequent to the decision of the case. Despite the defendant's procedural failure we have reviewed the ruling; *Saunders* v. *Saunders,* 140 Conn. 140, 145, 98 A.2d 815; and have found no error. Whether to allow counsel fees, and if so in what amount, calls for the

exercise of judicial discretion. *Krasnow* v. *Krasnow*, 140 Conn. 254, 262, 99 A.2d 104. The court made numerous findings concerning the defendant's financial circumstances and also found that the plaintiff did not work during the marriage. We are unpersuaded by the defendant's argument that the plaintiff could have sold the Bethany property to raise funds. On those facts, the court's award of counsel fees was proper.

Finally, the defendant claims that the court erred in denying his motion made during the trial to allow his attorney to withdraw. On the first day of the trial the plaintiff called Juan Rumino as a witness on her behalf. He testified that the attorney for the defendant had represented him in certain legal matters. On redirect examination, the plaintiff's counsel confronted the witness with an affidavit taken from him fourteen months previously in connection with these proceedings. The witness testified that he had made false statements in his affidavit because he had been angry with the defendant. The defendant claims that his attorney, in cross-examination, failed to question Rumino about his motivation for the false statements in his affidavit or about the change in the tenor of his testimony which the defendant contends had not been harmful to him on direct examination but was harmful on cross-examination. Rumino finished his testimony and, on the next hearing day, the defendant's counsel informed the court that his client had requested him to withdraw. The court sustained the plaintiff's objection to the motion to withdraw on the ground that prejudice had not been shown.

Practice Book § 44 (c) provides that "no attorney shall withdraw his appearance after it has been

entered upon the record of the court without the leave of the court. No application for such withdrawal shall be granted until the court is satisfied that reasonable notice has been given to the party or parties represented by the attorney and to other attorneys of record." The record clearly indicates that the defendant knew of his counsel's representation of the witness from the beginning of his testimony but waited until the witness had finished testifying before asking his counsel to withdraw. Moreover, the motion to withdraw was not made until just prior to the commencement of proceedings on the next trial day. No notice had been given to the plaintiff's attorney as required by § 44 (c) nor had other counsel been secured to continue the proceedings without delay. We conclude that the court did not abuse its discretion in denying the motion to permit the defendant's counsel to withdraw. *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 340, 160 A.2d 899.

There is no error.

In this opinion the other judges concurred.