[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The attorneys for the minor child, Crystal Consoli, have filed a motion to terminate the visitation of the defendant mother, Cynthia Giuliano.[1] The plaintiff father, John Consoli, supports the termination of visitation which has been vigorously opposed by the defendant.
A review of the extensive history of this case is necessary in order to understand how the parties reached this momentous crossroad. The underlying dissolution action was filed by the plaintiff on September 7, 1990. The court ordered a psychiatric evaluation of the parties and the minor child on December 19, 1990. On April 29, 1991, a dissolution judgment entered. A temporary order of joint legal and physical custody issued pending receipt of the psychiatric evaluation of Dr. Joseph Saccio.
Dr. Saccio completed his report on June 3, 1991. Dr. Saccio reported that the defendant was quite depressed, very angry and suspicious of other people's motivations. The defendant was so depressed and so angry at the plaintiff that her thinking and judgment were often inappropriate. The defendant accused the plaintiff of physical abuse of Crystal. She was unable to focus on Crystal and her needs and the defendant's mental state interfered with her ability to adequately parent Crystal. Dr. Saccio believed that the defendant's psychological problems were relatively chronic and not just responsive to recent stress. Dr. Saccio recommended that the plaintiff be awarded sole custody of Crystal and that a short term visitation schedule be established. He also recommended psychotherapy for both Crystal and the defendant.
The court approved an agreement of the parties and entered a supplemental judgment on June 6, 1991 awarding joint legal custody of Crystal to the parties with primary physical residence with the plaintiff. The court also approved a specific visitation schedule. The court ordered individual psychiatric counseling for the defendant and for Crystal. Finally, the court ordered a review by Family Relations in nine months.
On July 5, 1991, less than one month after entry of the CT Page 8800 supplemental judgment, the defendant filed an application for relief from abuse alleging that the plaintiff abused Crystal. The defendant sought and obtained an ex parte order awarding her temporary custody of Crystal. On July 12, 1991, after a hearing, the court vacated the ex parte restraining order.
On September 9, 1991, the plaintiff filed an ex parte writ of habeas corpus alleging that the defendant refused to return Crystal after her visitation. The court signed an ex parte order requiring the defendant to return the child and suspending her visitation rights. On September 17, 1991, the parties filed a stipulation with the court reducing the defendant's visitation to alternating weekends and requiring the parties to participate in an update of the psychological evaluation by Dr. Saccio. The defendant was also not allowed to take Crystal to a doctor unless the defendant encountered a bona fide emergency. The stipulation was subsequently approved by the court.
The defendant on June 22, 1992 again filed an application for relief from abuse alleging child abuse by the plaintiff and seeking temporary custody. The application was denied by the court on June 25, 1992.
On August 2, 1992, the defendant filed a motion to modify custody on the grounds that the plaintiff abused Crystal. On September 21, 1992, the plaintiff also moved to modify custody.
Dr. Saccio's updated psychiatric evaluation was completed on October 20, 1992. Dr. Saccio found no substantiation of the defendant's claims of child abuse by the plaintiff. He found that the defendant continued to include Crystal in her "delusional system" about the plaintiff and that it was "extremely dangerous" for Crystal. Dr. Saccio further stated that "the history of the divorce process is such that the repetitive accusations of abuse, which themselves bring about what amounts to a physical and psychological assault on Crystal, will go on unless visits are terminated." He further declared that "it is extremely important that the court act decisively at this time to protect Crystal. The evidence over a considerable period of time is conclusive that Crystal has been included in a pathologic thought system by her mother and can be protected only by terminating contact between them." Dr. Saccio recommended that sole custody be given to the plaintiff and that visits by the defendant be terminated.
On October 28, 1992, the court vacated all existing custody CT Page 8801 and visitation orders and awarded sole custody to the plaintiff. Visitation by the defendant was suspended, except for December 25, 1992, until January 10, 1993. Commencing January 10, the defendant's visitation was reduced to four hours every other week. The defendant was also ordered not to take the child to any doctor except in a bona fide emergency and with notice to the plaintiff and the attorney for the minor child.
Although there were no significant proceedings in family court again until 1995, the defendant in the interim made numerous complaints to the Department of Children and Families (DCF) and to the police alleging physical abuse of Crystal by the plaintiff. By the defendant's own admission in testimony before this court, she has contacted DCF at least twenty times alleging child abuse by the plaintiff.
On April 2, 1995, the defendant filed a motion to modify seeking custody of Crystal. On May 3, 1995, the plaintiff moved to terminate visitation. The attorneys for the minor child filed a motion for psychiatric evaluation of the parties and Crystal by the Yale Child Study Center which was granted by the court on July 18, 1995. The psychiatric evaluation was completed on April 12, 1996. The motion to terminate visitation which is the subject of the present court proceeding was filed by the attorneys for the minor child on August 2, 1996.
The psychiatric evaluation by the Yale Child Study Center was conducted by Dr. Ruth King, a child and adolescent psychiatrist. Dr. King testified at the hearing before this court on the motion to terminate visitation and her report of April 12, 1996 was submitted into evidence.
In her report, Dr. King described the defendant as being in a controlled rage and presenting the plaintiff as the enemy. The defendant still believes that Crystal is mistreated and abused in the Consoli home. Dr. King determined that none of the defendant's complaints of abuse have been substantiated.
Dr. King found that Crystal, who is now eight years old, has responded to the situation fostered by the defendant in manipulative, attention-seeking, and destructive ways. She further found that the defendant was not willing to work in a treatment program with the goal of supporting Crystal in the plaintiff's home. Dr. King stated that she agrees with the recommendations contained in Dr. Saccio's 1992 report and that CT Page 8802 "we now have four more years of evidence to support his conclusions." Dr. King recommended termination of the defendant's visitation with Crystal. In forceful language she stated the following: "Crystal should have no further visits with her mother Cynthia Giuliano. Such visits have already caused psychological harm to Crystal as documented in reports from Dr. Saccio, Ms. Scales and other mental health professionals over a period of years. Crystal's development and emotional health risks being irretrievably jeopardized unless she is given the protection she needs from the noxious interaction with Mrs. Giuliano."
Dr. King amplified her findings in testimony before this court on the motion to terminate visitation. She testified that Crystal feels that in order to be loyal to her mother she must support her mother's view that she is being mistreated in the Consoli home. This puts Crystal in an impossible situation, according to Dr. King, and is very damaging to her. As a result, Crystal has become manipulative, disrespectful of authority and prone to temper tantrums. She threatens aggressive behavior, is unable to comply with limits and has difficulty determining what is real. Crystal is also anxious, depressed and confused.
Visitation orders are subject to modification by the court. Conn. Gen. Stat. § 46b-56 (a). In modifying any order of visitation, the court shall be guided by the best interests of the child. Conn. Gen. Stat. § 46b-56 (b). The Connecticut Supreme Court has limited the trial court's authority to modify custody orders, and by implication, visitation orders by requiring that any modification be based upon a material change of circumstances which alters the court's finding of the best interests of the child. Hall v. Hall, 186 Conn. 118, 121
(1982).[2] See also Cleveland v. Cleveland, 165 Conn. 95, 100
(1973).
The best interests of the child is the touchstone for determining whether to modify existing visitation orders. Gallov. Gallo, 184 Conn. 36, 41-42 (1981). The court is to consider the rights and wishes of the parents and the recommendations of professionals, but the court must ultimately be guided by the welfare of the child. Id. at 43. See also Wilson v. Wilson,38 Conn. App. 263, 269 (1995).
In this case, the court is being asked to take the extreme step of completely terminating visitation of the minor child by her mother. Although the cessation of visits by a parent is a CT Page 8803 serious act, it is not unauthorized or unprecedented. As the Connecticut Supreme Court stated in Lehrer v. Davis, 214 Conn. 232,236 (1990), the rights of parenthood are not beyond limitation. The state may intervene and circumscribe those rights when necessary to protect the welfare of the child. "A parent's privilege of visitation of children whose custody is awarded to the other parent is not absolute, but is subordinate to the best interests of the child." Presutti v. Presutti, 181 Conn. 622,635-636 (1980).
It is inconceivable to anyone who is a parent to envision a day when it would be in the best interests of their child for the child not to visit with them anymore. Unfortunately, the unthinkable does occur, though rarely. Courts have concluded that the best interests of a child warrant the termination of visitation rights by a parent.[3] See El Idrissi v. ElIdrissi, 173 Conn. 295 (1977) and Simons v. Simons, 4 Conn. Sup. 457
(1937).
The attorneys for the minor child and the plaintiff assert that Crystal's best interests compel the cessation of all visitation with the defendant. The court must reluctantly agree. The court's reluctance is not based on any doubt as to the necessity for such a measure. It is based on an acute awareness of the loss that will be suffered both by Crystal and by the defendant by the prohibition of visitation. A tremendous sense of sadness pervades any decision to step between a mother and her child for the good of that child.
There has been a material change in circumstances that alters the court's determination of the best interests of the child. SeeHall v. Hall, supra, 186 Conn. 121. In the four years since the court modified the defendant's visitation in 1992, the behavior of the defendant has not changed. She continues to involve Crystal in her delusions of abuse and to poison Crystal against her father. What has changed is the extent of the harm her actions have inflicted on her daughter. Quite simply, the damage she has done to Crystal has grown much worse.
Crystal is now anxious, confused and depressed. She has been treated for dysphoria, temper discontrol and chronic family stress. Multiple medications have been prescribed in an effort to treat her maladies without success. Crystal has begun to respond to the defendant's behavior in "manipulative, attention-seeking, and destructive ways." Since 1992, she has been hospitalized at CT Page 8804 Elmcrest Psychiatric Institute on three separate occasions. As stated by Dr. King in her report, "each of these admissions was precipitated by deterioration in her behavior including increased aggressiveness, threats to physically harm her parents, siblings or herself, and extreme temper tantrums." Crystal is currently receiving treatment at the Yale Conduct Disorder Clinic.
A telling example of the effect that the defendant's claims of abuse have had on Crystal was provided through testimony of the plaintiff. He described an instance in the spring of 1995 in which the state police arrived at his door in response to a complaint of child abuse generated by the defendant. The police wanted to see Crystal to determine whether abuse had occurred. Crystal had already gone to bed for the night. She was awakened to meet with the state police. These events caused Crystal to fly out of control. She began to yell and scream, kick walls and roll around on the floor. The plaintiff was forced to bring Crystal that evening to St. Raphael's Hospital and ultimately to Elmcrest Psychiatric Institute. She remained at Elmcrest for 2-3 days.
The court has tried less restrictive means of deterring the defendant. It has ordered psychological treatment for the defendant, limited visitation, suspended visitation and imposed a prohibition on taking the child to the doctors. Nothing has worked.
It is manifest that the defendant is not willing to change her behavior. The defendant is intent on regaining custody of Crystal. She is oblivious to the severe harm to Crystal's emotional and psychological well-being caused by her actions.
It is now clear that the benefits that come to Crystal from her visits with her mother are far outweighed by the harm those visits have caused her. The balance has finally tipped sharply toward termination of visitation. This determination has been made with full recognition of the importance to a child of maintaining a close relationship with her mother. It takes great weight to tip the scales toward cessation of visitation. Sadly, the harm inflicted on Crystal exceeds that measure.
The defendant's right to visit with Crystal is hereby terminated. The defendant is ordered to obtain psychiatric counseling with the goal of recognizing the importance of supporting Crystal in the Consoli home and ending her attempts to disrupt and undermine the plaintiff's care and custody of CT Page 8805 Crystal. The Office of Family Relations shall review the matter in one year.
It is important to note that the court is not terminating the parental rights of the defendant. See Conn. Gen. Stat. §45a-707 (g) and § 45a-717. Should Crystal's emotional and psychological health improve and the defendant obtain the psychiatric help she needs, it may be appropriate that visitation resume in the future.
The defendant's motion for contempt and further psychiatric examination of Crystal is denied. The court finds that the plaintiff has not willfully violated the court's orders. The court also finds that an additional psychiatric examination of Crystal is not warranted.