## CELINE M. STAHL *v.* EUGENE R. BAYLISS, JR.
(AC 26311)

Schaller, Lavine and Pellegrino, Js.

Argued June 1—officially released October 10, 2006

*Norman A. Roberts II*, for the appellant (defendant).

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellee (plaintiff).

*Thomas D. Colin*, for the minor children.

*Opinion*

SCHALLER, J. The defendant, Eugene R. Bayliss, Jr., appeals from the trial court's judgment of dissolution. On appeal, the defendant claims that the court improperly (1) incorporated a 2003 stipulated parenting plan into its 2005 final dissolution decree without first determining whether it was in the present best interests of the minor children, (2) violated his due process rights by issuing orders without providing him an opportunity to conduct a meaningful hearing, (3) refused to hear his motions related to custody and (4) failed to grant him alimony. Because we agree with the defendant with respect to his first claim, we do not reach the remaining issues.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The parties were married on October 29, 1983, and have

three children.[1] After nearly nineteen years of marriage, the plaintiff, Celine M. Stahl, filed for dissolution of the marriage on January 9, 2002.

Following the initiation of the dissolution action, the parties, as part of the early intervention custody program, signed a fourteen paragraph handwritten document entitled "Stipulation Regarding Custody and Visitation." The terms of the stipulation provided, inter alia, that the parties would share joint legal custody of their two minor children, that the plaintiff would have primary physical custody of the minor children and that the minor children would remain in their present schools. The terms of the stipulation also specified that the parties believed the stipulation was in the best interests of the children and included a statement of the parties' intention to bifurcate the financial issues of the dissolution from the custodial issues. Finally, paragraph fourteen of the stipulation provided that any additional issues regarding custody and visitation would be mediated by attorney Sandra Lax.

On September 9, 2003, in open court, the court stated that it approved the stipulation and found it to be "fair and equitable under all the circumstances . . . ." After approving the stipulation, the court explained that "[a]t the time a final decree enters in this matter . . . this court or any other Superior Court will incorporate by reference this particular stipulation as the custody and visitation orders of the court."

On April 6, 2004, prior to the trial on the financial issues, the defendant filed a motion to modify and to vacate the stipulation. In support of his motion, the defendant argued that the orders regarding the custody and visitation of the children had not "worked effectively and [were] not serving the best interests of the

---

[1] At the time of the dissolution, the children were ages eighteen, fourteen and thirteen, respectively.

children . . . ." Following argument, on April 16, 2004, the court refused to entertain the defendant's motion to modify and to vacate and concluded that any modification of the stipulation was to be done in a postjudgment capacity.[2] Thereafter, during a September 9, 2004 status conference, the defendant again raised the issue of modification and filed a motion to modify the stipulation. The court explained that it expected to deal with the issue at trial.

On the first day of trial, September 14, 2004, Thomas D. Colin, the attorney for the minor children, inquired of the court whether the trial would proceed solely on the financial issues or whether the custody and visitation issues also would be heard. Colin requested that he be excused from the trial but be permitted to appear and be heard at final argument if the trial was to proceed solely on the financial issues. The court stated that it did not know whether the defendant's counsel would be addressing the motion to modify and explained that if there was no objection from counsel for the parties, Colin could return if custody issues arose. The defendant's counsel indicated that he was unsure whether the custody issues would be addressed but objected to Colin's being permitted to participate in closing argument without being present at trial. Thereafter, trial began without any apparent resolution of the issue.

[2] At a pretrial hearing held on April 6, 2004, the defendant informed the court of his motion to modify and to vacate. The parties subsequently presented argument regarding whether the stipulation was to be incorporated by reference into the final decree or become a pendente lite order. The court ordered that a status conference be held in order to review the transcript of the September 9, 2003 hearing during which the stipulation was adopted. On April 16, 2004, the status conference was held, and, after review of the relevant transcripts, the court refused to entertain the defendant's motion, concluding instead that the stipulation was "not a final decree. And it is only a final decree when the final decree takes place when the finances are taking place, but it's in the nature of a de facto order." Despite the refusal to rule on the motion to modify, the motion reflects an order entered on October 8, 2004, by the court denying the motion.

Following the trial's first recess, Colin again addressed the court and stated that the parties had "figure[d] out a way to deal with that motion to modify . . . which will allow me to be excused." He explained that "[p]ursuant to its own terms, paragraph [fourteen of the stipulation] requires [that] any additional issues regarding custody and visitation shall be mediated with attorney Sandra Lax. So, the parties have agreed that I will contact attorney Lax immediately to start the mediation process. Hopefully, that will result in a resolution of the outstanding issues." The court then proceeded to excuse Colin until final argument and stated that it "need not address the [custody] issue at this point since the parenting plan contains a submission for mediation, and that will take place immediately." The defendant's counsel again renewed his objection to Colin's being permitted to participate during closing argument without being present at trial. Thereafter, the trial continued with respect to the financial issues. No further reference was made during the trial, by counsel or the court, as to the outcome of any mediation of the custody and visitation issues. Neither the parties nor the court made further reference, moreover, to any resolution of the defendant's motion to modify custody and visitation.[3]

On February 4, 2005, the court issued its memorandum of decision in which it found that the parties' marriage had broken down irretrievably, rendered judgment dissolving the marriage, and issued various orders

---

[3] This is apparently due to the fact that the mediation had not occurred. During the defendant's closing argument, his counsel stated that "there is still a motion pending before this court with respect to custody and visitation. It has now been referred back to attorney Lax for mediation pursuant to the last paragraph of the September 9 stipulation, and we're going to have to deal with it apparently postjudgment." In addition, attorney Colin referred to the parenting and custody issues being resolved "for the time being" and expressed concern that the children "know they still have hanging over their head [the defendant's] pending motion to modify and vacate the September 9, 2003 stipulation."

relating to the parties' property and finances. The court, referring to its earlier ruling, also incorporated the parties' 2003 custody and visitation stipulation into its final decree. In doing so, the court made reference neither to the results of any mediation nor to any resolution of the motion to modify. The court did not make any finding regarding the *present* best interests of the children, although it noted the earlier 2003 finding that the stipulation was fair and equitable. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims on appeal that the court improperly incorporated the parties' 2003 stipulation into its final decree without first determining whether it was in the present best interests of the minor children. We agree.

"In a dissolution action the custody of minor children is not finally determined until entry of the decree dissolving the marriage." *Hall* v. *Hall*, 186 Conn. 118, 122, 439 A.2d 447 (1982). "It is statutorily incumbent upon a court entering orders concerning custody or visitation or a modification of such order to be guided by the best interests of the child." *Wilson* v. *Wilson*, 38 Conn. App. 263, 269, 661 A.2d 621 (1995). "In reaching a decision as to what is in the best interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." *El Idrissi* v. *El Idrissi*, 173 Conn. 295, 301–302, 377 A.2d 330 (1977).

In *Guss* v. *Guss*, 1 Conn. App. 356, 360–61, 472 A.2d 790 (1984), this court addressed a situation analogous to the present case. There, the marriage of the parties was dissolved, and custody of their two minor children was awarded to the defendant mother. Id., 357. Subsequently, the parties entered into a stipulation modifying the judgment of dissolution. Id., 358. The stipulation

included a provision that if the defendant removed the children from Connecticut, it would be in the best interests of the children to award custody automatically to the plaintiff father. Id. The stipulation was signed by both parties and approved by the court. Id. Some fifteen months later, the defendant removed the children from Connecticut. Id. Subsequently, the court, in response to the plaintiff's motion for change of custody, concluded that the parties' stipulation controlled the issue and thereafter signed an order changing custody without a hearing to determine the children's present best interests. Id., 358–59.

On appeal, we reversed the judgment in part and concluded that "[t]here was no determination, other than at the time the judgment was modified in accordance with the stipulation, that the enforcement of the agreement would serve the best interests of the children. A child's best interests, however, cannot be prospectively determined. [Rather] the court was bound to consider the child[ren's] *present* best interests and not what would have been in [their] interests at some previous time." (Emphasis in original; internal quotation marks omitted.) Id., 360–61; see also *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 664, 420 A.2d 875 (1979).

In the present case, the court did not make a best interests determination at the time of its final decree in February, 2005. Rather, it summarily incorporated the parties' September, 2003 stipulation despite the uncertain status of renewed mediation and the uncertain status of the motion to modify. Although the stipulation may have been in the children's best interests in 2003, the court was not free to assume that those interests remained unchanged more than one year later in February, 2005. Moreover, although the defendant did agree in 2003 to abide by the stipulation, which provided for mediation of the custody and visitation issues, this

fact does not relieve the court of its fundamental obligation to make a present best interests determination at the time of dissolution, prior to entering its final decree. "It is true that our courts usually defer to terms negotiated by the parties. The continuing jurisdiction of the Superior Court over the custody of minor children of a dissolved marriage may, however, not be ousted by the terms of an agreement entered into between the parents at the time the marriage is dissolved. . . . Under [General Statutes § 46b-56 (b)], it is clear that the court must resolve the issue of custody in the best interests of the child." (Citation omitted.) *Guss* v. *Guss*, supra, 1 Conn. App. 360. In permitting the parties to renew their efforts to mediate the custody and visitation issues, the court stated that it "need not address the [custody and visitation] issue *at this point* since the parenting plan contains a submission for mediation, and that will take place immediately." (Emphasis added.) As stated previously, the results of that mediation were not discussed at trial or in the court's memorandum of decision.[4] The court, therefore, left the custody and visitation issues raised by the defendant in his motion to modify unresolved. Without ascertaining the results of the mediation or hearing and resolving the defendant's motion to modify, the court chose instead to incorporate a best interests determination supported by outdated information. See *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 303, 536 A.2d 978 (concluding that trial court, by relying on outdated evidence, failed to consider child's present best interest when it determined custody), cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). Accordingly, we conclude that the court abused its discretion by adopting the parties' 2003 stipulation without first determining the present best interests of the children in February, 2005.[5]

[4] Indeed, the plaintiff's counsel conceded at oral argument that the record is devoid of any reference to the results of the mediation.

[5] Our Supreme Court has stated that "[t]he issues of finance and custody, however, are inextricably intertwined with one another. As we have stated,

The judgment is reversed with respect to the orders of custody and support and the other financial awards and the case is remanded for a new hearing on those issues.

In this opinion LAVINE, J., concurred.

PELLEGRINO, J., dissenting in part. Although I agree with the majority that the judgment of the trial court must be reversed because the court improperly failed to determine the best interests of the parties' children at the time of dissolution, I do not agree that the court must revisit its financial orders on remand. See footnote 5 of the majority opinion. The defendant, Eugene R. Bayliss, Jr., filed two motions to modify the parties' stipulation regarding custody and visitation, and in neither motion did he seek primary custody of the children. The defendant requested only that the court order the family relations division of the Superior Court to undertake a custody evaluation that would address the problems that he had experienced with the stipulation. Specifically, the defendant alleged in his motions that the plaintiff, Celine M. Stahl, had disparaged him to the children and had not supported his relationship with them. Even if the defendant's motions ultimately are resolved in his favor, there will be no effect on the

orders relating to custody and support are part of a carefully crafted mosaic such that a change to one will necessarily create a change to the other." *Taff* v. *Bettcher*, 243 Conn. 380, 384 n.2, 703 A.2d 759 (1997); see also *Doe* v. *Doe*, 244 Conn. 403, 457–58, 710 A.2d 1297 (1998) ("In light of our conclusion, however, that the court will be required to adjudicate the custody of the child on remand, we decline to consider the defendant's financial claims. The court's custody determination may also necessitate an award of child support, and in light of the fact that the court's financial awards ordinarily constitute a mosaic . . . the child support award may alter the other financial awards. Thus, it would serve no useful purpose to review those awards at this stage of the litigation." [Citation omitted.]).

In light of our conclusion that a remand is necessary and the corresponding possibility that custody could be awarded to the defendant, the trial court will be required to reconsider the issues of support and alimony as well.

financial orders. "Every improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). I therefore would proceed to review the defendant's final claim on appeal, which is that the court improperly failed to award him alimony. I would reject that claim because the defendant's argument in support thereof amounts to little more than his belief that he deserves alimony. In sum, I would reverse the court's judgment as to the custody orders and would affirm the judgment as to the financial orders.