******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS BROCHARD *v.* BRITT BROCHARD
(AC 37435)

Beach, Keller and West, Js.

*Argued February 9—officially released May 24, 2016*

(Appeal from Superior Court, judicial district of New Haven, Regional Family Trial Docket, Gordon, J. [dissolution judgment]; Gould, J. [motion for contempt, motion to reargue].)

*Britt Brochard*, self-represented, the appellant (defendant).

*Thomas Brochard*, self-represented, the appellee (plaintiff).

*Opinion*

WEST, J. The defendant, Britt Brochard, appeals from the postdissolution judgment of the trial court denying her motion for contempt. In her motion for contempt, the defendant claimed, inter alia, that the plaintiff, Thomas Brochard, had failed to provide her with an authorization form in compliance with the order of the court, *Gordon, J.* The defendant claims that the court, *Gould, J.*, denied her motion based on the incorrect belief that it had already been ruled on. We reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In a memorandum of decision dated July 6, 2011, the court, *Gordon, J.*, dissolved the parties' marriage. In doing so, it set forth the following facts. The parties were married on August 27, 1995, in Ridgefield. They have two children. The plaintiff instituted the divorce action in 2008 following the parties' separation. The court found their marriage had irretrievably broken down. The court issued a number of orders, ruling that the plaintiff, who was employed, would pay alimony to the defendant, who was a homemaker. It ordered that the defendant would be awarded all right, title, and interest in the marital home and would be responsible for all costs associated with the home.

On July 20, 2011, the defendant filed a postjudgment motion for an order, alleging that the plaintiff had not made payments on the mortgage on the family home since March, 2011. The mortgage was solely in his name. The defendant requested that "the plaintiff be required to bring the mortgage current, including all attorney's fees and other charges. In the alternative, the defendant moves that the plaintiff be required to immediately provide the bank with authorization to speak directly to the defendant, timely file all necessary paperwork in the foreclosure action to allow the parties to participate in the foreclosure mediation, that the plaintiff attend the foreclosure mediation sessions along with the defendant, and that the plaintiff agree to any resolution the defendant comes to with the bank."

Judge Gordon held a hearing on the defendant's motion for an order on August 12, 2011.[1] At the hearing, the plaintiff's attorney presented an authorization, claiming that the proffered authorization would satisfy the defendant's motion. The court ruled that in order to effectuate a modification of the mortgage, the authorization "has to say more than converse and negotiate. It has to say that she's his authorized agent for conversing, negotiating, entering into an agreement, all that kind of stuff. I mean, they're not going to let her—they—I mean, it's got to be specific that she has the authority . . . ."[2]

On November 13, 2013, the defendant filed a motion for contempt, claiming that the plaintiff had violated

Judge Gordon's August 12, 2011 order by, inter alia, failing "to execute an authorization allowing the defendant to speak with and represent the plaintiff with the mortgage loan holder, Wells Fargo, as the mortgage has been in the name of the plaintiff solely; said authorization to make [the] defendant the plaintiff's 'authorized agent for conversing, negotiating, entering into an agreement, all that kind of stuff' with Wells Fargo to modify the mortgage loan to avoid foreclosure. Said authorization was 'to be specific that she has the authority.'"

The defendant's motion for contempt was heard by the court, *Munro, J.*, on November 14, 2013. Judge Munro examined an authorization agreement drafted by the defendant's attorney and asked if the plaintiff consented to it. The plaintiff's attorney replied that he did not, due to language that stated that the defendant would "have full and complete authority to negotiate, agree and execute proposed settlements with said mortgages." The plaintiff was concerned that this language would permit the defendant to extend the term of the mortgage, thereby further tying up his ability to obtain a new mortgage for a house of his own. The court subsequently told the defendant that "if he signs something that allows you to negotiate, it should not be something that puts him on the hook for any more liability than he has now. Do you understand that?" The defendant replied that she believed that the intent of Judge Gordon's order was to allow modification of the loan, and that Judge Munro should consult the full transcript containing Judge Gordon's order. Thereupon, Judge Munro stated: "I'm going to stop. I hear you. This is a complicated problem. It's not going to be dealt with on short calendar with an audience full of people waiting. I'm going to give you a three day hearing, and this will be rolled into the three day hearing." Following the short calendar hearing, on November 26, 2013, the plaintiff filed an objection to the defendant's motion for contempt, attaching an authorization form and asserting that "Judge Munro has already told the defendant that Judge Gordon did not intend that the defendant could expand the plaintiff's exposure under the new mortgage."

The case subsequently was transferred to the regional family trial docket. At a hearing on February 6, 2014, regarding the transfer, Judge Munro asked, "[a]ll right, and the motions I sent to regional are motions regarding modification of custody. Any financial motions at all?" The defendant replied: "A number of financial motions, there's a motion outstanding for contempt on not paying half the children's expenses; contempt on medical expenses; contempt on alimony; [and] contempt on not signing the authorization for me to be able to modify the home." Judge Munro stated, "I remember that." The parties then began discussing the plaintiff's financial disclosure and did not mention the contempt

motions further.

The court, *Gould, J.*, held a hearing on various matters on June 10, 2014. After concluding the custody and visitation portion of the hearing, Judge Gould indicated that he intended to turn to financial issues. The defendant stated that she wished to proceed to the authorization issue. The plaintiff objected stating that he needed a few days to prepare. Judge Gould queried whether the authorization issue was before him or in the foreclosure court. The defendant replied that it was before him, after which Judge Gould stated that they would proceed with outstanding motions on financial issues at a later date.

The defendant filed a motion for an emergency hearing on August 1, 2014, in which she asserted that the court never returned to the authorization issue. This motion was heard by Judge Gould on September 11, 2014. Judge Gould stated that it was his understanding that there was a ruling that the authorization did not have to be provided.[3] The defendant protested that Judge Munro's ruling indicated otherwise. Judge Gould then stated, "I'm not indicating [Judge Munro] ruled on [the authorization]. I'm indicating it was ruled on previously; it did not have to be provided."

The defendant filed a motion to reargue on October 3, 2014,[4] asserting that Judge Gould's ruling of September 11, 2014, was based on a misapprehension of fact. She contended that Judge Gould incorrectly believed that the motion for contempt regarding the authorization had previously been ruled on. She attached an order from the foreclosure court, *Ecker, J.*, extending the sale date and noting that "the record in this matter does not indicate that [the plaintiff] has made any efforts whatsoever in this proceeding to resist foreclosure or assist his ex-spouse's ongoing attempts to save the home through mediation or negotiation."

Judge Gould considered the defendant's motion to reargue on November 6, 2014. He stated that "[t]his court said there was a prior ruling the authorization for modification of the mortgage would not have to be provided, and I have a specific recollection for issuing that order." The plaintiff asserted that the issue had been decided by three judges, and offered to quote from Judge Munro; Judge Gould told the plaintiff's attorney, "[y]ou don't have to . . . I recall this specifically." The defendant asserted that the transcripts demonstrated that the issue had not been ruled on. The plaintiff quoted the statement by Judge Munro that the plaintiff should not be on the hook for more liability. Judge Gould then denied the defendant's motion to reargue with prejudice, noting that she could take an appeal if she chose.

The defendant filed the present appeal on November 24, 2014. She claims two grounds, but the essence of

both is that Judge Gould's ruling on the motion for contempt for the plaintiff's failure to provide an authorization was an abuse of discretion because it was based on an incorrect understanding of the procedural history. In response, the plaintiff asserts that Judge Munro's statements at the November 14, 2013 hearing constituted a denial of the defendant's motion. Prior to oral argument before this court, on October 19, 2015, the defendant filed an amended appeal form amending the appeal to include a decision by Judge Gould from September 28, 2015.

The September 28, 2015 memorandum of decision recounts that hearings on a number of postjudgment motions were held on June 3, 4, and 10, 2014, and April 20, 21, and 22, 2015. Among other issues, it discusses the defendant's motion for contempt from November 13, 2013, stating that the motion claimed that the plaintiff was in contempt because "the plaintiff was ordered to bring the outstanding mortgage on the family home, where the defendant resides with the two children, current from March, 2011 through July, 2011, that the plaintiff would be responsible for any attorney's fees, interest and/or penalties relating to foreclosure actions on the subject home, that the plaintiff was *ordered to execute an authorization permitting the defendant to speak with the mortgage loan holder*, and that the plaintiff was to provide the defendant with any and all communications received from the bank." (Emphasis added.) The decision does not reference the statements by Judge Gordon related to the authorization, but it does state that the plaintiff alleged that "the court, *Munro, J.*, has previously ordered that the plaintiff did not have the duty to agree to a mortgage modification that would substantially increase the length of indebtedness to the bank." It also states that "[i]n his objection, the plaintiff further alleges and provides evidence of a September 1, 2011 letter from his attorney to the defendant [that] enclosed the requested authorization referred to above, and further alleging that the defendant has been directly and actively dealing with the lender since September, 2011." The decision concludes that "the recitation of the court's orders and findings made by the plaintiff to be accurate. The undersigned also finds that the plaintiff provided the subject authorization to the defendant." The court then denied the motion for contempt.[5]

At oral argument before this court on February 9, 2016, the parties discussed the impact of the September 28, 2015 decision. The defendant maintained that Judge Gould had not provided her with a chance to argue her case before issuing the decision.[6] She conceded, however, that she had not filed transcripts of subsequent hearings, which would demonstrate that she was not afforded an opportunity to argue her position. The plaintiff asserted that the September 28, 2015 decision was based on Judge Munro's decision. The plaintiff did not claim, despite this court's questioning of the

defendant, that a hearing had been held between November 6, 2014 and September 28, 2015, at which both parties were given sufficient opportunity to be heard regarding the authorization issue.

The defendant claims that Judge Gould abused his discretion when he determined that the authorization issue raised by the defendant's motion for contempt was already decided, and when he purported to decide the issue in his September 28, 2015 memorandum of decision. We agree.

We begin by setting forth our standard of review and the relevant legal principles. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007). Our Supreme Court recently clarified that we should utilize a two step inquiry when analyzing a judgment of contempt: "First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) Id., 693–94. "A finding of . . . contempt [occurring outside the presence of the court] must be established by sufficient proof that is premised on competent evidence presented to the trial court and based on sworn testimony. . . . A trial-like hearing should be held if issues of fact are disputed." (Internal quotation marks omitted.) *Mekrut* v. *Suits*, 147 Conn. App. 794, 803, 84 A.3d 466 (2014), see also *Kennedy* v. *Kennedy*, 88 Conn. App. 442, 443, 869 A.2d 1252 (denying motion for contempt without hearing from guardian ad litem was abuse of discretion), cert. denied, 275 Conn. 902, 882 A.2d 671 (2005).

These principles provide guidance in how we should analyze the defendant's claim. In the context of this case, in order to rule on the motion for contempt, the trial court was required to determine whether the authorization forms proffered by the plaintiff complied with Judge Gordon's order of August 12, 2011.[7] Our task is to determine whether any court ruled on the merits of this issue, and, if so, whether it did so following an evidentiary hearing. Determining whether a court ruled on an issue is a matter of law which, like whether an order is ambiguous, requires de novo review, while the issue of whether a hearing was required is reviewed under an abuse of discretion standard. See *Mekrut* v. *Suits*, supra, 147 Conn. App. 804; *Kennedy* v. *Kennedy*,

supra, 88 Conn. App. 443.

The record contains several authorization forms which were signed by the plaintiff. An August 2, 2011 authorization was provided with a September 6, 2011 letter from the defendant's then attorney stating that the defendant "might as well use it if you can while we try to negotiate a more detailed authorization." It is signed by the plaintiff and states that "[t]he undersigned hereby authorizes the mortgage holder, Wells Fargo Bank, to converse and negotiate with Britt Brochard relative to all aspects of the mortgage and mediation process." An authorization titled "third party authorization form" and dated August 15, 2011, is signed by the plaintiff and states in pertinent part: "I/we Thomas C. Brochard give authorization to Wells Fargo Home Mortgage to discuss my loan with: Name: Britt Brochard . . . ." A September 1, 2011 letter and authorization were attached to the plaintiff's November 26, 2013 objection to the motion for contempt, to which the September 28, 2015 memorandum of decision refers. This authorization states in pertinent part that "[t]he purpose of this authorization is to allow [the defendant] to have (1) full access to all communications and data concerning both mortgages (2) to be allowed to negotiate with the mortgage holders and to effectuate a modification of the mortgages (3) to acknowledge [the plaintiff] will fully cooperate with the mediation process by providing any data required and executing any settlement documents. This authorization is not meant to (a) expand any duties [the plaintiff] has pursuant to the divorce judgment in the above dissolution matter (b) it will not cause him to pay any funds towards the mortgage arrearage, refinance of the mortgages or any other costs associated with the mortgages or these modifications (c) it does not require him to execute any documents which increase his exposure under the existing loan agreements including, but not limited to, exposure for a deficiency judgment."

Finally, an unsigned authorization dated August, 2011, states that the defendant would have "full and complete authority to negotiate, agree, and execute proposed settlements with said mortgagees." This mirrors the language to which the plaintiff objected before Judge Munro.

The parties do not dispute that the plaintiff provided the defendant with an authorization providing access to information; Judge Gordon determined that such an authorization was insufficient. The defendant's contention is that the plaintiff is in contempt of Judge Gordon's order of August 12, 2011, because he has failed to sign an authorization making the defendant his "authorized agent for conversing, negotiating, entering into an agreement . . ." as ordered by Judge Gordon.

On the basis of our review of the record, we conclude that Judge Munro never ruled on whether any of these

authorizations met the requirements ordered by Judge Gordon because Judge Munro specifically stated that she would hold a further hearing. Although Judge Munro expressed that any authorization "should not be something that puts [the plaintiff] on the hook for any more liability than he has now," she continued to discuss the issue with the parties and, after the defendant asserted that the intention of Judge Gordon's ruling was for the loan to be modified, Judge Munro stated that it was a complicated problem that she would not rule on then. She also had previously stated that it was not her intention to get into the substance of the issue, and the defendant had asserted that she did not have the necessary documentation with her. Moreover, the plaintiff filed an objection to the defendant's motion following the hearing with Judge Munro, suggesting that he did not consider the matter settled at that point. Judge Munro therefore did not rule on the defendant's motion for contempt and did not interpret the substance of any authorization in light of Judge Gordon's order and the facts regarding the mortgage modification. Her statements indicate that the proper scope of the authorization was a complex issue that would require more extensive argument, a thorough examination of Judge Gordon's decision, and the presentation of evidence.

Likewise, we conclude that Judge Gould did not rule on whether any authorization met the requirements ordered by Judge Gordon. Judge Gould's statements prior to his September 28, 2015 memorandum of decision indicate that he believed that the matter had been decided previously. He did not specify when it had been decided, and the September 28, 2015 ruling demonstrates that it was not ruled on prior to the September 28, 2015 memorandum of decision.

We now turn to whether Judge Gould abused his discretion by denying the defendant's motion in his September 28, 2015 memorandum of decision. The record before us indicates that no evidentiary hearing was held before the decision was issued. The defendant asserted at oral argument that she needed an evidentiary hearing in order to provide evidence, including testimony from the mortgagee, regarding the scope of authorization that would be necessary to effectuate a modification of the mortgage. This is consistent with Judge Munro's statement that the authorization issue was a complex one requiring a more lengthy hearing. When asked at oral argument before this court whether Judge Gould gave both parties an opportunity to be heard regarding the authorization issue before issuing the memorandum of decision, the plaintiff again asserted that the hearing before Judge Munro was dispositive. The plaintiff did not suggest that the September 28, 2015 decision was based on a subsequent, full, hearing, but, rather, that it was based on the prior decision of Judge Munro. The decision itself does not state whether any argument related to the authorization

occurred on the three hearing days that followed the November 6, 2014 denial of the defendant's motion to reargue, it does not refer to any evidentiary hearing on the authorization issue, and it does not find that a hearing would be unnecessary.[8] We, therefore, conclude that Judge Gould's failure to conduct an evidentiary hearing constituted an abuse of discretion.[9]

The judgment is reversed with respect to the trial court's conclusion that the plaintiff was not in contempt for failing to provide an adequate authorization and the case is remanded for an evidentiary hearing on that issue consistent with this opinion.

In this opinion the other judges concurred.

[1] Whether all costs associated with the home included payment of the mortgage was an additional matter brought before Judge Gordon at the August 12, 2011 hearing.

[2] The following exchange occurred regarding the authorization:

"[The Plaintiff's Counsel]: Your Honor, if I might, I may save the court some time here. The alternative relief requested is for a signed authorization. [The plaintiff] has a signed authorization. I do—from him today that I can give counsel if that solves that.

"[The Defendant's Counsel]: It doesn't solve everything, Your Honor.

"The Court: It solves part of it. Okay.

"[The Defendant's Counsel]: It solves, it solves part of it, and I'd be happy to take that—

"The Court: Okay. Good.

"[The Defendant's Counsel]: —signed authorization. I don't know that that—but that doesn't resolve—

"The Court: Okay.

"[The Defendant's Counsel]: —all of it, and I think this issue is addressed in some other motions as well.

* * *

"[The Defendant's Counsel]: Just like to follow up with that. So, this is an authorization to converse and negotiate with Wells Fargo Bank depending on where all of this goes to, I'd like Your Honor's decision to address if in addition he needs to—

"The Court: Well, it has to say more than converse and negotiate. It has to say that she's his authorized agent for conversing, negotiating, entering into an agreement, all that kind of stuff. I mean, they're not going to let her—they—I mean, it's got to be specific that she has the authority—

"[The Plaintiff's Counsel]: If counsel will draft up an authorization that satisfies her, [the plaintiff] will sign it.

"[The Defendant's Counsel]: I will draft an authorization.

"The Court: Okay. Good."

[3] The following exchange occurred:

"The Court: All right, I've reviewed the motion, the emergency motion, I've reviewed the objection to it, and I reviewed the response. My situation with this, unless I hear differently from one side or the other, is this has already been ruled upon and/or any additional information will be taken up at the time of the hearing which is my understanding is October 27 and 28, is that correct?

"[The Plaintiff's Counsel]: That's correct, Your Honor.

"The Court: All right. Ms. Brochard, anything else?

"[The Defendant]: Yes. Judge Munro started to hear it, I have the entire transcript for you; she did not finish hearing it. She said it was complicated, that I had not given her the full goods. I want the opportunity to present my arguments, okay, because Judge Gordon's orders were not complied with, and I need that authorization in order to remove the house from foreclosure because the last time I went to foreclosure court, there were two things that were missing. One was that authorization because without—

"The Court: And wasn't there a ruling that that authorization did not have to be provided?

"[The Defendant]: No, there was not.

"The Court: Well, that's my understanding. That's my understanding and my interpretation of it, ma'am.

"[The Plaintiff's Counsel]: I have the transcript, Your Honor.

"[The Defendant]: Yes, I have the transcript, too, Your Honor. At the end

of the transcript, Judge Munro states, okay, that I have not given her the full goods and that she understood that it was complicated, that she heard me, and she was going to roll that into a hearing. There was no other part of the mortgage that was heard that day. Further, in a later transcript, several months later, which I included as part of my reply, Judge Munro states— asks us are there any financial motions on the table that are being sent to Middletown, and I named some of them and included in one of them the modification—the authorization on the house, and she said, I remember that. She never said she ruled on it because she did not.

"The Court: I'm not indicating she ruled on it. I'm indicating it was ruled on previously; it did not have to be provided. That's going to—

"[The Defendant]: No.

"The Court: Going to remain the ruling today.

"[The Defendant]: There was—there was—

"The Court: Anything else?

"[The Plaintiff's Counsel]: Thank you, Your Honor.

"[The Defendant]: There was never any—when was it ruled on, Your Honor? There was never any ruling on it.

"The Court: Ms. Brochard, I've ruled for today, thank you.

"[The Defendant]: I don't understand your ruling, Your Honor, there was no ruling.

"The Court: I've ruled for today, ma'am. Thank you."

[4] Practice Book § 63-1 provides that an appeal, or a motion to reargue extending the appeal period, should be filed within twenty days of the court's judgment. The defendant filed her motion to reargue twenty-three days after the judgment. This is a nonjurisdictional defect, the plaintiff has not moved to dismiss the appeal due to late filing, and we may exercise our discretion to consider the appeal. See *Alliance Partners*, *Inc.* v. *Voltarc Technologies*, *Inc.*, 263 Conn. 204, 209–10, 820 A.2d 224 (2003) ("[T]he twenty day time limit provided by Practice Book § 63-1 (a) is not subject matter jurisdictional. . . . In the absence of jurisdictional barriers, appellate tribunals must exercise their discretion to determine whether a late appeal should be permitted to be heard." [Citations omitted; internal quotation marks omitted.]).

[5] In this appeal, we address only the defendant's challenge to Judge Gould's determination of the authorization issue.

[6] The defendant acknowledged that Judge Gould did ask about the authorization again, but that the plaintiff's attorney stated that the issue was part of an appeal, and the defendant did not have all of her materials. The defendant later stated that the judge never took up the contempt issue again.

[7] If the authorization forms did not comply, it would be the task of the trial court to provide clarification as to what authorization was required. See *Sablosky* v. *Sablosky*, 258 Conn. 713, 722, 784 A.2d 890 (2001) ("[t]he doors of the courthouse are always open; it is incumbent upon the parties to seek judicial resolution of any ambiguity in the language of judgments"); but see *In re Leah S.*, supra, 284 Conn. 700 (distinguishing *Sablosky*).

[8] Although we were concerned during oral argument before this court regarding the defendant's failure to provide transcripts of all the hearings, we determine that the record is adequate for our review because there is no dispute regarding whether the court addressed the issue on a day for which we do not have the transcript; neither party claims that any argument or evidence related to the appeal was heard on those hearing days, and the court's memorandum of decision does not indicate that argument or evidence related to the authorization occurred on those hearing days. See *O'Halpin* v. *O'Halpin*, 144 Conn. App. 671, 675–76, 74 A.3d 465 (where parties disputed whether court addressed issue during hearing, appellant was required to provide transcript of that hearing), cert. denied, 310 Conn. 952, 81 A.3d 1180 (2013); *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 71–72, 924 A.2d 160 (2007) (same).

[9] In addition, the lack of analysis of Judge Gordon's order demonstrates an abuse of discretion. The September 28, 2015 memorandum of decision misstates the defendant's argument by stating that the defendant contended "that the plaintiff was ordered to execute an authorization permitting the defendant to speak with the mortgage loan holder . . . ." It does not reference Judge Gordon's order of August 12, 2011, regarding the authorization, although it does reference other aspects of Judge Gordon's order. It references Judge Munro's statement regarding the plaintiff's liability, but not Judge Munro's statement that a further hearing was necessary. It also makes no mention of Judge Gould's September 11, 2014 ruling that the motion for contempt had already been decided, or his November 6, 2014 ruling that the prior ruling was with prejudice and that the defendant could appeal if she chose. It refers to the September 1, 2011 letter in which the plaintiff

enclosed an authorization form, but does not refer to the contents of that authorization, or to whether the defendant had an opportunity to present argument regarding the adequacy of the authorization proffered with the September 1, 2011 letter. Finally, it refers to the "authorization referred to above," or "the subject authorization," referring back to the authorization referred to earlier in the memorandum of decision as the "authorization permitting the defendant to speak with the mortgage loan holder . . . ." As previously stated, Judge Gordon had ordered that the plaintiff was required to furnish a more extensive authorization.

---