******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN D'AMATO *v.* DIANNE HART-D'AMATO
(AC 36849)

Beach, Keller and Bear, Js.

*Argued September 9—officially released December 13, 2016*

(Appeal from Superior Court, judicial district of Fairfield, Regional Family Trial Docket at Middletown, Adelman, J.)

*Dianne Hart*, self-represented, the appellant (defendant).

*Patrice A. Cohan*, with whom was *Jeanmarie A. Riccio*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Dianne Hart-D'Amato, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, John D'Amato, and entering related custody and financial orders. The defendant claims that the trial court (1) violated her right to due process when it denied certain motions without a hearing, (2) erred in granting sole legal custody of the minor children to the plaintiff, (3) issued inequitable financial orders, and (4) erred in denying her motions for disqualification of the trial judge. We disagree and affirm the judgment of the trial court.

The following facts, as found by the trial court in a comprehensive memorandum of decision, are relevant. The parties were married in 1989. At the time of trial in 2014, the plaintiff was fifty years old and working as a letter carrier for the United States Postal Service. The defendant was forty-nine years old and working as a juvenile probation officer. The plaintiff's work schedule was inflexible. The defendant's schedule was comparatively flexible and she historically had been the primary parental figure in the children's lives. The parties have two children, the first born in 1998 and the second in 2002. At the time of trial, the defendant was residing alone at the marital home in Fairfield and the plaintiff was residing in a condominium in Monroe with the two children.

Following a trial, the court issued a memorandum of decision on March 17, 2014. A principal issue in the trial was the defendant's use of alcohol. The court did not credit the defendant's testimony that she did not drink much, although she said that she did use alcohol to cope with an emotionally abusive husband. The court, rather, found that the defendant had abused alcohol for a long period of time, at least since 2006. John Mager, the children's guardian ad litem, testified that the children had reported to him that the defendant had driven while intoxicated with them in the car on more than one occasion. On December 31, 2011, the defendant became intoxicated and was hospitalized. Mager testified that the hospital records indicated that the defendant's blood alcohol level was .448 when she was admitted and that the defendant reported to intake staff that she routinely drank large amounts of vodka daily for the majority of her adult life. Michael Reitman, who was licensed as a clinical social worker and an alcohol and drug counselor, had treated the defendant since January, 2012. The defendant refused any other form of treatment and Reitman continually had urged the defendant to reconsider her refusal. Since December 31, 2011, the defendant had been successful in maintaining her sobriety, but continued to minimize her difficulty with alcohol.

The defendant's abuse of alcohol had a significant

impact on the children. The plaintiff influenced to some extent the children's attitudes toward the defendant, but, in any event, the children's alignment with their father grew and they reported negative feelings toward the defendant even during the time from January, 2012, to October, 2012, when the defendant had primary care of the children and the plaintiff did not interfere with her activities with the children. After October, 2012, the children and the plaintiff moved out of the marital home in order to reduce the strife to which the children were being exposed. Mager testified that the defendant's unwillingness to accept responsibility for her actions without placing blame elsewhere prevented healing between her and the children.

The children preferred to have very little or no contact with the defendant. The court found that the best interests of the children required orders granting sole legal and physical custody to the plaintiff, that the defendant maintain her sobriety, and that the children maintain a relationship with both parents. The court so ordered and further specified that on a three week rotating basis the defendant was to have visitation with the younger child for three hours the first week, the older child for three hours the second week, and both children for three hours the third week. The court ordered that the children, the plaintiff and, at an appropriate time, the defendant, were to engage in counseling with the "goal and expectation that the parental access between the defendant and the minor children shall increase over time." The court also ordered that the defendant refrain from alcoholic beverages and submit to random alcohol testing; either a positive test or a failure to take a test would result in cancellation of that week's visitation.

The court further ordered the defendant to pay $252 weekly in child support to the plaintiff and ordered that the parties share unreimbursed medical, dental and child care expenses. The plaintiff was to pay 53 percent and the defendant 47 percent. The court ordered that the parties' deferred income was subject to equitable distribution. The court did not order alimony. This appeal followed.

I

The defendant first claims that her right to due process was violated when the court denied without a hearing her motion for a continuance, her "motion to open and set aside judgment and for new trial," her motion to reargue/reconsideration, and her motion for clarification.[1] We disagree.

Prior to the start of trial, and almost two years after the plaintiff initiated the action, the defendant filed a motion for a continuance in which she argued that her attorney failed to prepare adequately for trial because she "can no longer pay him." The court denied the

motion without elaboration. In the course of a hearing on a postjudgment motion to disqualify the trial court, the defendant mentioned the court's previous denial of her pretrial motion for a continuance. The court at that time explained that "issues relating to the custody of children are priority issues. This case has been pending for a long time. The matter was scheduled in advance. I don't continue custody trials absent extraordinary circumstances like illness or death."

After the memorandum of decision was issued, the defendant filed several motions. One was entitled "motion to open and set aside judgment and for new trial." In that motion she argued that a new trial was warranted because her trial counsel was "ineffective" in that he failed to prepare adequately for trial and engaged in "threatening behaviors." She further claimed that Mager, the guardian ad litem, "provided dishonest testimony throughout the trial." With respect to this issue, the defendant argued that Mager falsely had testified that he had spoken with Reitman. The defendant highlighted the court's finding that "[Mager] testified that in his discussion with Reitman, the therapist had reported that he had recommended more intensive type treatments and that he had recommended that [the defendant] attend [Alcoholics Anonymous]. The defendant refused any other form of treatment and Reitman reported to [Mager] that he had continued to urge her to reconsider that decision." The defendant attached to the motion an affidavit by Reitman averring that he had neither spoken to nor met with Mager. She also noted the court's finding that "[i]t was only through the efforts of [Mager] . . . that vital information from the St. Vincent's Hospital records were brought to the court's attention." She argued that the hospital records were not introduced into evidence and Mager "testified to the contents of the record that were completely made up and false. Another willful act of perjury . . . ." The court denied the motion for clarification.

The defendant also filed a motion to reargue, which claimed "ineffective counsel and fraudulent testimony" by Mager. This motion was denied.

The defendant filed a motion for clarification in which she stated that the court denied her "motion to open and set aside judgment and for new trial" without a hearing, and asked the court to clarify the legal basis upon which the court denied that motion. The court also denied this motion.

The defendant argues that "[a]s a matter of law, the trial court's . . . failure to afford a hearing on the defendant's motion for a continuance, motion to re-open judgment for a new trial based on perjury and ineffective counsel, motion to reargue/reconsider, and motion for clarification deprived the [defendant of her due process right] to be heard." Pursuant to Practice Book § 11-18 (a), however, whether to hear oral argu-

ment on motions in civil matters is a matter within the discretion of the court, except in limited circumstances, not relevant here, in which argument is a matter of right. Section 11-18 (a) provides in relevant part: "Oral argument is at the discretion of the judicial authority except as to motions to dismiss, motions to strike, motions for summary judgment, motions for judgment of foreclosure, and motions for judgment on the report of an attorney trial referee and/or hearing on any objections thereto. . . ." We review the claim of error in not hearing oral argument under an abuse of discretion standard. See *Brochard* v. *Brochard*, 165 Conn. App. 626, 638, 140 A.3d 254 (2016).

It is clear, then, that the defendant was not entitled to oral argument as of right on her motion for a continuance, her "motion to open and set aside judgment and for new trial," her motion to reargue/reconsideration, and her motion for clarification. The trial court's decisions not to hold evidentiary hearings with respect to these motions were, by the rules of practice and case authority, within its discretion. There is nothing in the record to indicate that the court abused its discretion in ruling on the motions without a hearing.[2]

The defendant focuses her substantive argument regarding the disposition of her motions on her motion to open. She argues that Mager's "testimony throughout the trial, while being under oath, was deceitful and willfully dishonest. That the defendant's counsel did not properly cross-examine [Mager] despite the defendant asking him to do so. In addition, the defendant's hospital records were never introduced as evidence. Yet, [Mager] dishonestly testified as to the contents of the record. Said testimony was completely fraudulent and deceitful. The trial court . . . relied on [Mager's] false testimony. This resulted in significant harm being done to the defendant and her minor children. . . . It is clear in the memorandum of decision that the court based its recommendation on the testimony of [Mager]. However the new evidence clearly shows the court that a new trial would produce a different outcome, in light of the fact that a key witness for the plaintiff has committed acts of perjury."

The defendant presents two grounds for her argument that Mager's testimony was "fraudulent." First, she points to the court's statement in its memorandum of decision regarding Mager's testimony during trial. The court stated that Mager had testified that, during a discussion he had had with Reitman, Reitman indicated that he had urged the defendant to attend Alcoholics Anonymous and had also suggested that the defendant needed more treatment than what was being provided, but she refused. The statement, deemed fraudulent by the defendant, was never made. Although Mager testified about the underlying facts, he did not testify that he learned about the facts through a conversation with

Reitman. That the court apparently incorrectly attributed the information in its memorandum of decision does not necessarily undermine the judgment; the manner in which Mager obtained this information is not a fact material to this case, and, thus, the finding as to attribution is harmless.[3] See *Lambert* v. *Donahue*, 78 Conn. App. 493, 507, 827 A.2d 729 (2003) ("Where . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." [Internal quotation marks omitted.]).

Second, the defendant states that Mager's testimony as to the contents of the hospital records regarding the defendant's treatment for detoxification at St. Vincent's Hospital was intentionally inaccurate. Mager's testimony as to the content of the records was admitted into evidence without objection, however, and was not inconsistent with the testimony of the defendant's witness, Reitman; we note, however, that Reitman's testimony regarding the contents of the hospital records was less comprehensive than that of Mager. Further, the defendant herself presumably could have introduced the hospital records themselves into evidence in order to contest Mager's version of events.[4] In this respect, because any discrepancies could have been discovered at trial, the evidence could not have been newly discovered for purposes of a motion to open. *Worth* v. *Korta*, 132 Conn. App. 154, 160–61, 31 A.3d 804 (2011) (evidence "newly discovered" for purposes of motion to open if "it could not have been discovered earlier by the exercise of due diligence" [emphasis omitted; internal quotation marks omitted]), cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012). It was clear from the motion to open itself that the defendant's assertions of perjury, in the absence of newly discovered documentation, lacked merit. The court did not abuse its discretion in denying the motion to open without an evidentiary hearing.

## II

The defendant next claims that the court erred in granting sole legal custody of the minor child to the plaintiff.[5] We disagree.

"It is statutorily incumbent upon a court entering orders concerning custody or visitation or a modification of such order to be guided by the best interests of the child. . . . In reaching a decision as to what is in the best interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." (Citation omitted; internal quotation marks omitted.)

*Stahl* v. *Bayliss*, 98 Conn. App. 63, 68, 907 A.2d 139, cert. denied, 280 Conn. 945, 912 A.2d 477 (2006).

General Statutes § 46b-56 provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make . . . any proper order regarding the custody, care, education, visitation and support of the children . . . [and] the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . .

"(b) In making or modifying any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. Such orders may include, but shall not be limited to . . . (3) the award of sole custody to one parent with appropriate parenting time for the noncustodial parent where sole custody is in the best interests of the child; or (4) any other custody arrangements as the court may determine to be in the best interests of the child.

"(c) In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability

of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision. . . ."

The defendant argues that Mager's testimony relevant to the child's best interests was erroneous and should not have been relied on by the court. She claims he was mistaken in testifying, inter alia, that she had been drinking during the majority of her adult life, including large amounts of vodka daily, and in reporting that the children had no desire to have contact with her.[6] She also contends that the court ignored evidence favorable to her with respect to the "best interest" factors under § 46b-56. Most of her argument regarding these factors refers to abusive behavior on the part of the plaintiff and the claim that the children had stronger ties to the defendant than to the plaintiff.

The defendant essentially requests us to reassess the credibility of witnesses. "[I]t is well established that the evaluation of a witness' testimony and credibility are wholly within the province of the trier of fact. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Citation omitted; internal quotation marks omitted.) *Schoenborn* v. *Schoenborn*, 144 Conn. App. 846, 851, 74 A.3d 482 (2013). The court found the testimony of Mager credible and the testimony of the defendant and her family, to the effect that her issues with alcohol were recent phenomena and were caused by the behavior of the plaintiff, not credible. We decline to second-guess this determination.

The court found that the defendant had been successful in maintaining her sobriety since January, 2012, but she continued to minimize the significance and extent of her alcohol related difficulty. The court noted that it did not credit the testimony of the defendant or her family that her issues with alcohol were a short term

reaction to circumstances. The court stated that it was not ignoring emotional abuse by the plaintiff, but that the defendant's placing blame elsewhere for her alcohol issues only placed her and the children at greater risk and prevented healing between the defendant and the children.[7] The court, on the other hand, noted that the plaintiff encouraged the children's negative attitude toward the defendant and contributed to the breakdown of the marriage. The court nevertheless found that the children reported their feelings about the defendant in very negative terms, even when the defendant was the primary parent and the plaintiff was not interfering. The court found that the children considered the defendant's actions to be harmful to them. The court stated that the "strong and consistent preference" of the children was to have "very limited contact with the defendant."

The court concluded that, despite the children's preference, "the best interests of the children are served here by having a meaningful relationship with both parents." The court discussed the difficulty in achieving that goal in light of the strong views of the children and the facts that at least one child was almost sixteen at the time of trial and the children had not experienced helpful therapy during the pendency of trial. The court concluded by noting that "the defendant's request for joint legal custody is shocking based on the reality of this case and truly demonstrates the defendant's total lack of insight into her children and the impact her alcoholism has had on them. . . . She and the plaintiff have not been able to communicate on any meaningful level for a very long period of time. While such a lack of co-parenting communication is not completely her fault under any sense of the concept it is simply not a viable path for protecting the minor children and promoting their best interests at this time." Although the court ordered that the defendant's visitation with the children was set at three hours per week, contingent upon the defendant refraining from alcoholic beverages, the court also ordered that the children engage in therapy with the goal of increasing the defendant's access to them.

It is clear that the court carefully examined all of the evidence, analyzed the § 46b-56 factors, and determined that it was in the children's best interest to award sole custody to the plaintiff. "The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child." (Internal quotation marks omitted.) *Ford* v. *Ford*, 68 Conn. App. 173, 187, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002). We cannot conclude that the court's conclusion in this regard was an abuse of discretion.

### III

The defendant next claims that the court erred in its distribution of the marital assets. We disagree.

"[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . [T]he foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 366–67, 999 A.2d 721 (2010).

The defendant argues essentially that she is unable to comply with the financial orders that she pay $252 weekly in child support, 47 percent of all unreimbursed/uncovered medical/dental expenses, 47 percent of all reasonably necessary child care, and her share of the expenses required to place the marital home on the market.[8] She contends that she has been ordered to pay "child support twice" because, in addition to the $252 weekly child support, she would expect to spend additional money on the children during visitations. She further argues that her recent retirement[9] caused a decrease in her income and that she is unable to pay the amount required under the financial orders.[10]

The defendant has not supplied a persuasive reason to disturb the court's exercise of discretion in fashioning its orders.[11] She was not required to pay child support twice: courts routinely order a parent who enjoys visitation also to pay a share of child support.[12] The defendant's argument that the amount that she was required to pay exceeded her current income refers to facts not in the record before the trial court at the time of the decision and, as such, we cannot consider it. "[W]e cannot consider evidence not available to the trial court to find adjudicative facts for the first time on appeal. . . . It is well established that this court does not find facts." (Footnote omitted.) *State* v. *Edwards*, 314 Conn. 465, 478, 102 A.3d 52 (2014).

IV

The defendant last claims that the court abused its discretion in denying her motions for recusal. We disagree.

"Canon 3 (c) of the Code of Judicial Conduct governs judicial disqualification. That canon provides in relevant part that (1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . . Canon 3 (c) thus encompasses two distinct grounds for disqualification: actual bias and the appearance of partiality. The appearance and the

existence of impartiality are both essential elements of a fair trial. . . . As such, [t]o prevail on its claim of a violation of this canon, [a party] need not show actual bias. The [party] has met its burden if it can prove that the conduct in question gave rise to a reasonable appearance of impropriety." (Internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 137, 143, 1 A.3d 260 (2010). "A trial court's ruling on a motion for disqualification is reviewed for abuse of discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *In re Christopher C.*, 134 Conn. App. 464, 471–72, 39 A.3d 1122 (2012).

The defendant asked Judge Adelman several times to recuse himself. At a hearing held on February 13, 2015, regarding the plaintiff's motion to vacate the appellate stay, the defendant requested Judge Adelman to "permanently recuse [himself] from my case." After hearing from the defendant, the court stated: "[Y]ou've repeatedly made claims that I'm biased against you, primarily because I've ruled against you, although I have also entered rulings in your favor. . . . If someone rules against you or does something that is adverse to your position you immediately assume that person is biased against you. I certainly regret that you have that opinion. I've certainly done everything I can to give you a fair hearing on every motion that you've raised. Your motion for me to recuse myself is denied, as it has been in the past."

The defendant argues on appeal that the court engaged in behaviors showing bias against her, such as transferring the case to Bridgeport when he was assigned to Bridgeport, denying her rights to due process, relying on the testimony of Mager, and making certain comments at a July 11, 2014 hearing held on various postjudgment motions,[13] and engaging in retaliation against her for expressing her concerns about the guardian ad litem system. The citations to the record referenced in her brief and the motions for disqualification to which the defendant directs our attention suggest that the defendant's argument of bias stems largely from the court's rulings that were adverse to her.[14] "[T]he fact that a trial court rules adversely to a litigant . . . does not demonstrate personal bias." (Internal quotation marks omitted.) *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 317, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010). The defendant has offered no valid reason why a reasonable observer would suspect partiality. *McKenna* v. *Delente*, supra, 123 Conn. App. 143 ("[i]f an objective observer, in view of all of the facts would reasonably doubt the court's impartiality, the court's discretion would be

abused if a motion to recuse were not granted" [internal quotation marks omitted]). We have carefully examined the record, including the court's decision, and find that the defendant was accorded fair and reasonable consideration. We see absolutely no appearance of impropriety and, indeed, the record reflects nothing other than a conscientious effort to resolve a contentious case. We, therefore, reject the assertion that the court abused its discretion in denying the motion to recuse in this matter.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant seeks review of these claims under the plain error doctrine. This doctrine, codified at Practice Book § 60-5, is an extraordinary remedy. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009).

The present claim, however, is reviewable without resort to doctrines reserved for unpreserved claims of error. We will review the merits of this claim under the abuse of discretion standard.

[2] Although notions of due process include the opportunity to be heard; see *Barros* v. *Barros*, 309 Conn. 499, 507–508, 72 A.3d 367 (2013); the defendant patently was afforded the opportunity to present her points of view in writing. Such opportunity satisfies due process. See *Bojila* v. *Shramko*, 80 Conn. App. 508, 518, 836 A.2d 1207 (2003) (absence of hearing on motion to open not violation of procedural due process where hearing not required under Practice Book § 11-18 [a]).

[3] We also note that the evidence regarding the defendant's difficulties with alcohol was overwhelming and was provided by several sources.

[4] We have examined the exhibits, and do not find the St. Vincent's Hospital records to be among those submitted into evidence.

[5] The older child has reached the age of majority. We address the claims only as they relate to the younger child, who is a minor at the time of this appeal.

[6] In her statement of issues regarding this claim the defendant also includes an argument that the trial court erred in failing to establish a holiday, vacation, and birthday visitation schedule that included her. Our Supreme Court "has consistently held in matters involving child custody, and, by implication, visitation rights, that while the rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child which must control the decision of the court." (Internal quotation marks omitted.) *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980). The court's holiday visitation schedule included visitation on Christmas and Mother's Day. The court found that the children's expressed desire was to have no contact with the defendant, but the court nonetheless found that it was in the children's best interest to try to develop a meaningful relationship with defendant; it ordered therapy for the children in an effort to try to mend their relationship with the defendant. The court expressed the "goal and expectation that the parental access between the defendant and the minor children shall increase over time . . . ." The court further ordered that the children were free to contact the defendant any time and the plaintiff was not to interfere, except incident to legitimate discipline. We conclude that the court did not abuse its discretion in fashioning its visitation orders.

[7] The court also noted that much of the emotional abuse described by the defendant occurred after the filing of the complaint and after her hospitalization.

[8] The court ordered that the defendant pay for any improvements or minor repairs costing less than $500 that might be recommended by the realtor

or required by the buyer's lender. The cost of major items exceeding $500 were to be shared equally by the parties.

[9] Her retirement occurred after the court's judgment and while this appeal was pending. Evidence regarding it is not part of the record in this appeal.

[10] The defendant argues consistently throughout her discussion of this claim that the court failed to use a "mosaic approach" in crafting its financial orders. It is true that "financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 818, 949 A.2d 557 (2008). This statement refers to the practical impossibility of reversing only one financial order when the entirety of the financial orders are interwoven. The concept of the mosaic does not specifically apply to the defendant's claims.

[11] The defendant also argues that the court's order that she transfer a percentage of her pension to the plaintiff, while not requiring him to transfer a portion of his pension to her, was punitive, and that the court's order requiring her to maintain life insurance naming the plaintiff as beneficiary is "encouraging the plaintiff to have the defendant murdered." The plaintiff's arguments are without merit.

[12] The duty to support is, however, wholly independent of the right of visitation. *Raymond* v. *Raymond*, 165 Conn. 735, 742, 345 A.2d 48 (1974).

[13] At the hearing, Mager testified that, despite his efforts, he was unable to find a therapist for the minor children by the date specified in the court's orders. He stated that he was unable to find a therapist in the immediate geographical area with a PhD because some declined to provide services after hearing about the file and the others declined after reviewing the memorandum of decision. Mager testified that there seemed to be a trend that therapists refuse to take on high conflict divorce cases. The defendant, who was self-represented at the hearing, questioned Mager regarding whether he was adverse to the children engaging in therapy and about her concerns regarding Mager as the children's guardian ad litem. The court sustained the objections of the plaintiff's attorney as to these questions and then stated that "the attack on the therapeutic community by litigants who have not been successful in court has, obviously, made many of these therapists adverse to getting involved in these cases. They're getting sued and there's plenty of therapy work for people who are not involved in litigation. . . . That's tragic because you and these girls need some therapeutic assistance . . . ." The court explained, "I'm going to have to go down the stream to other therapeutic individuals because you and others like you have created a hostile environment . . . ." The defendant argues that this statement by the court indicated bias and that the court's orders were punitive. We do not agree.

In the course of its remarks, the court was restating Mager's testimony regarding a trend in the provision of care by therapists in high conflict divorce cases, such as the current case. The court's statements at a post-judgment hearing, in which an issue was whether orders in the memorandum of decision had been executed, do not reflect bias in crafting orders months earlier in its memorandum of decision. The court's statements reflect its findings in the memorandum of decision that the defendant refused to authorize communications between the family relations counselor and one of the therapists, that the selection of a co-parenting counselor was unduly delayed at least in part due to the defendant's procrastination, that, when therapists were found, the defendant ended therapy more than once, claiming that the therapist was not working well with the children or the parties, and that the children blamed the defendant for undermining their therapy and were unwilling to engage in more therapy.

The court, then, expressed factual findings leading to a conclusion that the defendant was making progress difficult; the court further noted, essentially, that such behavior extrapolated over a larger population caused difficulty for many people. These statements were not in themselves indicative of a personal bias. See *Barca* v. *Barca*, 15 Conn. App. 604, 613, 546 A.2d 887 ("[t]he alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case"[emphasis omitted; internal quotation marks omitted]), cert. denied, 209 Conn. 824, 552 A.2d 430 (1988).

[14] We note that not all of the court's rulings were adverse to the defendant. For example, the court decided several contempt motions in favor of the defendant and, perhaps more markedly, awarded no alimony, despite finding

that the defendant's income was greater than that of the plaintiff.

At least one of the defendant's complaints, however, is not grounded in an adverse ruling. When Judge Adelman was transferred from the regional family docket in Middletown to an assignment in Bridgeport, he retained this case. The defendant argues that his retaining the case indicated an animus toward her. The argument overlooks the more obvious motive of judicial efficiency and, indeed, the parties resided in Monroe and Fairfield, far closer to Bridgeport than to Middletown. We do not draw an inference of animus from a neutral act.

---